No. 114.—QUINCY R. BORING and his WIFE, plaintiffs in error, *vs.* JAMES D. ROLLINS, executor, &c. defendant.

[1.] When the answer swears off the equity of the bill, the injunction ought, in general, to be dissolved.

In Equity, in Heard Superior Court. Motion to dissolve injunction. Decided by Judge HAMMOND, at Chambers, June 28th, 1856.

This bill was filed by Boring in right of his wife and as next friend for A. A. Houston, Brajonia Houston, B. Houston and William S. Houston, minor children of John Houston, deceased, against James D. Rollins, executor of the last will and testament of John Houston, deceased.

The bill alleged that John Houston died, leaving his last will and testament—by the 1st item of which "he desired that all his just debts should be paid.

"2d. That as his children should become of age or marry, he desired that each should have a negro of value equal to the one given to his daughter Elizabeth Rollins, wife of the defendant, and that after his youngest child should become of age or marry, that his wife (one of complainants) should draw one negro, equal in value to the one drawn by the children."

By another item in said will, he desired that his property should be kept together for the benefit of his wife and children; that his widow (one of the complainants) should not be accountable for the proceeds of the property, but should use it in the maintenance and education of his children; and when all of the children married or arrived at age, the property was to be equally divided between his widow and children.

That he left an estate of some $10.000, and debts amounting to some $3.000. The property went into the possession of Rollins as executor. The bill alleges mismanagement of the estate by Rollins, and goes on to make divers specifications as to his mismanagement of said estate; that instead of paying off the debts, he has actually increased the indebtedness of the estate; that he has paid off accounts and returned them to the Court of Ordinary, and then returned the notes given in liquidation of said accounts; that he has converted debts due to the estate to his own use.

The bill goes on to state that Rollins had applied for and obtained an order from the Ordinary of Heard County to sell two negroes to pay the debts of the estate, and that they were advertised for sale, &c.

The bill prays that he may be restrained and enjoined from selling the negroes until the real indebtedness of the estate may be ascertained, &c.

The defendant filed his answer denying, specifically and generally, all the charges in the bill relative to the mismanagement of the estate. The answer also states, that when defendant came into the possession of the estate, he proceeded, with the advice and consent of the widow, to pay off the debts existing against the estate with the proceeds of the property until the year 1855, when the widow took possession of the crop, and refused to allow its application to the discharge of the debts against the estate.

Upon the coming in of the answer, Counsel for defendant moved the Court to dissolve the injunction. The Court sustained the motion, and Counsel for complainants excepted.

Boring and Wife *vs.* Rollins, ex'r.

Buchanan; Wright, for plaintiffs in error.

Sims & Erskine, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

[1.] We doubt whether there was any equity in this bill. The will made it the duty of the executor to pay the debts out of the property. Debts are the first charge upon an estate. These debts amounted to $3.000, the estate to $10.000. The bill does not allege that these debts have been paid by the executor, or that they might have been paid by him, without a sale of the two negroes which the executor got leave to sell, or some other property of the estate. It is true that the bill contains charges of mismanagement against the executor; but it is equally true, that these charges, giving them their utmost latitude, cannot be made to amount to an allegation that the debts had been paid, or that they might have been paid without a sale of any of the property remaining in the hands of the executor at the time when the bill was drawn. This being so, can there be any equity in the bill; i. e. any right on the part of the complainants to stop the sale of the two negroes? It is most questionable whether there can.

But we agree with the Court below in thinking the equity of the bill, if it contained any, sworn off by the answer.

The answer denies all the charges of mismanagement. This, of itself, would be sufficient to destroy any equity in the bill, seeing that the bill lacks an allegation that the debts have been paid.

The answer, however, proceeds to state that the executor, with the consent of the widow, who is now the complainant, Mrs. Boring, undertook to pay the debts by the plan of applying to their payment only the income of the estate, and that he prosecuted this undertaking until sometime in the

year 1855, when she took possession of the crop and pre-- vented him from prosecuting it any further.    And this state- ment, it is argued for the  plaintiff in error, is not responsive to any allegation in the bill.    And, in truth, there is not any distinct  allegation in the  bill to which it is  responsive; but the bill is, 'from its  nature,  necessarily  a bill,  a part of the object of  which is  to get an  account of the estate, and then, to have  decreed to the complainants whatever relief. it may turn out that  they shall  be entitled  to on the taking  of the amount.    And to the attainment of this object of the bill, the prayer  for general relief was a  sufficient  prayer.    But this object  could  not  have  been  attained  unless  the  executor should, in his answer, have set forth a full statement of the pro- perty of the  estate,  and of  all the acts  done by him in the management of the property.    Therefore, the statement in his answer of any of his acts done in the management of the pro- perty, would  seem to be directly responsive to the *prayer* of, the bill.

And  whatever is  responsive to the  prayer of a  bill, is, I think, to be taken to be *prima facie* true for the respondent. It is what he has called for.

But  be this as it may, we consider  the  equity of  *this* bill. to have been sworn off when the allegations of mismanage- ment were denied.

And so, we affirm the judgment complained of.